[No. 22749. Department One. May 15, 1931.]

R. F. Robinson et al., *Respondents*, v. Puget Electric
Welding Company, *Appellant*.[1]

*Allen & Walthew*, for appellant.

*Weter, Roberts & Shefelman* and *Ernest M. Russell*,
for respondents.

Parker, J.—The plaintiffs, using the name Robinson
Sales Company, and the defendant welding company,
a corporation, entered into a contract, a portion of
which is in writing reading as follows:

[1]Reported in 299 Pac. 405.

"Puget Electric Welding Co.          July 29, 1929.
     301 Horton St.,
     Seattle, Wash.
"Gentlemen:
     "Confirming conversation, we propose to furnish and install at 301 Horton St., one General Electric Stationary Arc Welding Motor Generator Set and accessory equipment, as covered by the attached list. This equipment has been used previously and it is at present in storage in Salt Lake City.

     "The equipment will be wired complete from entrance point, ready for power company connection to welding panels. All wiring and material furnished shall conform to the city ordinances and be left in first class operating condition.

     "The complete price for this equipment installed as above, shall be $2,500.00, payable as follows:

     "$500.00 payable with order

     "$500.00 upon arrival of equipment and after inspection, before removal from transportation company.

     "$1,500.00 balance on promissory note payable $125.00 first of each month at the rate of 7% per annum.

     "Title of all equipment to remain in our name until completion of final payment.

"Yours very truly,
"ROBINSON SALES COMPANY,
"By R. F. ROBINSON,

"Accepted July 29, 1929,
     Puget Electric Welding Co. ·
"By A. O. Nordine,
          "Sec'y Treas."

Attached to this written portion of the contract is a list specifying one 800 ampere welding circuit, one 400 ampere welding circuit, and two 200 ampere welding circuits, but it does not, in terms, specify any stabilizing reactors.

On the same day, it was orally agreed between the parties, as a part of the contract, that, in addition to paying the $2,500, the welding company should convey

to the sales company a smaller used electric welding set, to be delivered to the sales company upon the larger set being properly installed in an efficient, first-class, workable condition. It was then further orally agreed between the parties that proper stabilizing reactors to complete and make the larger set efficiently workable would be installed by the sales company as a part of the set. This was a disputed question, but so found by the court on sufficient evidence.

The welding company executed a bill of sale for the smaller set to the sales company on the date of the written portion of the contract, on the same date executed and delivered to the sales company an installment promissory note for the principal sum of $1,500, on the same day paid to the sales company $500, and thereafter, upon the arrival of the set at Seattle paid an additional $500 to the sales company.

On November 10, 1929, the sales company, claiming to have installed the larger set, as contracted, commenced this action in the superior court for King county, praying for recovery from the welding company upon the $1,500 installment note, for recovery of the smaller set, and for "such other and further relief as to the court may seem just." The welding company responded by denial of proper installing of the larger set by the sales company; and, by cross-complaint, prayed for rescission of the contract, cancellation of the bill of sale for the smaller set, cancellation of the $1,500 note, and recovery of the $1,000 paid upon the contract. The issues so made being of equitable cognizance, the cause proceeded to trial in the superior court sitting without a jury, resulting in findings and judgment, the latter reading as follows:

"Now, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

"(1) That plaintiffs have brought their action pre-

maturely and no cause of action existed at the commencement of the within suit and their complaint is therefore dismissed, without prejudice, however, to plaintiffs' right to proceed upon the maturity of their cause of action by the installation of stabilizing reactors upon the 400 ampere panel and upon the two 200 ampere panels of the General Electric Arc Welding Set which was heretofore sold to the defendant by the plaintiffs; and the plaintiffs are hereby granted a reasonable time in which to install the same, and upon their said installation the plaintiffs will have fully performed their contract. The defendant is further denied any damages by reason of the delay of the plaintiffs in installing the stabilizers up to this time.

"(2) That the defendant's cross-complaint requesting a rescission should be, and hereby is, denied, and the said cross-complaint dismissed."

From this disposition of the cause in the superior court, the welding company has appealed to this court.

The principal controversy between the parties, up to the time of the rendering of the judgment, from which the sales company has not appealed, was as to whether or not the contract called for the installing by the sales company of stabilizing reactors, also called stabilizers. The set agreed to be installed consists, as we have noticed, of four parts, called circuits or panels; all four parts, if properly installed, being capable of simultaneous, efficient operation. The purpose of the stabilizers is to so control the flow of the electric current that all four parts may be used at the same time, each for a separate welding process, which cannot be done efficiently without stabilizers. The set arrived at Seattle near the last of August, 1929. The following of the trial court's findings seem to be well supported by the evidence:

"IV. That it was the understanding and the agreement between the parties that the said welding set so to be sold and installed by the plaintiffs for the defendant was to be left in first class operating condition, so

that any number or all of its panels could be operated together at the same time, and not simply that one panel thereof could be operated alone.

"V. ˙ That thereafter, upon the arrival of said motor welding set at Seattle, on board railway cars, plaintiffs notified defendant thereof; and the defendants made such inspection of the set and its equipment as was possible on the car and failing to find any stabilizers among the equipment, so notified the plaintiffs in writing and did thereupon pay to the plaintiffs the $500.00 mentioned in the written agreement with the understanding and upon the agreement that such payment should not constitute an acceptance of such machinery and that it would not be finally accepted by the defendant unless and until said set had been installed by the plaintiffs and left in first class operating condition, as agreed, thereupon it was agreed that the plaintiffs would cause said set to be installed on defendant's plant. Said installation, except one panel, was completed on the 28th day of August, 1929, but the fourth panel thereof was not installed by the plaintiffs until on or about the 4th day of October, 1929.

"VI. That thereafter and during the latter part of October and the first part of November, 1929, the defendant did test the said machine in the presence of the plaintiff, Armstrong, and did find that the same was not in first class operating condition, in that the said set did not work properly, nor do proper welding when more than one welding panel was in use, due to the fact that the welding 400 ampere welding panel and two 200 ampere welding panels were not equipped with what is known as stabilizing reactors, which was a part of the equipment listed on the machine shown by the circular so marked and initialed by the plaintiffs and represented by them to be of the same kind as that which they had agreed to sell; that thereafter the plaintiffs made two tests of said machine but in said tests operated only one welding panel at a time, and that at neither of said times did the plaintiffs operate more than one welding panel.

"VII. That subsequent to the 24th day of October, 1929, and up to the time of the commencement of this action, the plaintiffs did repeatedly assure the defend-

ant that they would cause said machine to be placed in first class operating condition, and defendant did retain said machine because of such assurance, and did believe the plaintiffs would do so; that the plaintiffs did make certain minor changes and adjustments to said machine, but at no time did the plaintiffs install said machine or leave it in first class operating condition in the meaning of said contract and of the agreement between the parties; and at no time did said machine work satisfactorily with more than one panel at a time. That all that is required to place the machine in first class operating condition is to install stabilizing reactors upon the 400 ampere welding panel and upon the two 200 ampere welding panels.

"VIII. That on or about the 6th day of November, 1929, the defendant did demand of the plaintiffs that they forthwith set said machinery in first class operating condition or remove the same from defendant's plant; that thereafter on the 10th day of November, 1929, this action was commenced by the service of the summons and complaint upon the defendant; that at said time the plaintiffs had not installed said machinery and left the same in first class operating condition and it did not and would not, without the installation of stabilizers, work satisfactorily as a multiple set.

"IX. That at the time of the commencement of this action there was no sum due to the plaintiffs on or under said contract nor the said promissory note, nor were they then entitled to the possession of the old welding set so agreed to be delivered to them as part consideration for the multiple set to be sold and installed.

"X. That the plaintiffs are entitled to a reasonable time in which to install stabilizing reactors upon the 400 ampere welding panel and upon the two 200 welding panels. That upon their installation the first payment on said $1,500.00 note will fall due and the balance of said note will be payable in monthly installments thereafter as set forth in said note. That upon the said installation of said stabilizers the plaintiffs will be further entitled to the delivery of the said small welding set.

"XI. That the defendant has never notified the plaintiffs of its intention to rescind nor was it its intention so to do. That the defendant has not been damaged because of the failure of the plaintiffs to install the stabilizers up to this time."

██ It is contended in behalf of the welding company that it is entitled to a decree of rescission of the contract, and to have restored to it all that it parted with under the contract. This is a matter determinable by a weighing of all of the equities arising incident to the making and the attempted carrying out of the contract, as is well stated in 3 Black on Rescission and Cancellation (2d ed.), § 644, as follows:

"A decree for the rescission of a contract or the cancellation of a written instrument is not granted as of course, even when the jurisdiction of the court is undoubted. Applications for such relief are addressed to the just and sound discretion of the court, to be exercised, it is true, in conformity with established principles and precedents, but still having a regard to the specific facts before the court, and seeking to determine what is reasonable and proper under the circumstances of the particular case; . . ."

We have here the following considerations lending support to the trial court's disposition of the case; (1) A continuing controversy between the parties up to the rendering of the judgment in this action as to whether or not it was the contractual duty of the sales company to furnish and install stabilizers to make the set efficiently workable; which controversy was waged, as it appears to us, by the sales company in good faith, though ultimately unsuccessful. (2) The continued efforts of the sales company to make the set workable without stabilizers; which efforts were acquiesced in by the welding company up to the time of the commencement of this action. (3) The expenditure of several hundred dollars by the sales company in in-

stalling the set in the welding company's plant, which would be a total loss to the sales company if rescission should be awarded as prayed for by the welding company. (4) No unconditional claim of rescission by the welding company until it filed its answer and cross-complaint in this action.

These considerations were, we think, such as to warrant the trial court in refusing to decree rescission, in view of the relation of the parties up to the time of their controversy coming into court.

We have not overlooked the contention that the commencement of this action by the sales company was such a refusal on its part to install stabilizers that the welding company then had the absolute right of rescission. There is, it must be conceded, some substantial room for arguing in that behalf, but, weighing all the equities above noticed, we are of the opinion that the matter of rescission, as prayed for by the welding company, still remained determinable within the sound discretion of the trial court.

It is further contended in behalf of the welding company that, notwithstanding rescission may have been properly denied, the trial court erred, to its prejudice, in decreeing that

". . . the plaintiffs are hereby granted a reasonable time in which to install the same [stabilizers], and upon their said installation the plaintiffs will have fully performed their contract;"

and in further decreeing that

". . . the defendant is denied any damages by reason of the delay of the plaintiffs in installing the stabilizers up to this time."

The argument seems to be that these are unwarranted final adjudications as to rights which may be drawn in question in some future action.

It seems to us that these adjudications mean no more

than that they are final as to the rights of the parties as of the time of the commencement of this action and the filing of the welding company's cross-complaint very soon thereafter, and will not impair the rights of either party arising out of conditions occurring after the commencement of the action and the filing of the welding company's cross-complaint. The cause becoming one wholly of equitable cognizance, it seems to us the court thereby clearly became empowered to dispose of the contentions of the parties as their respective rights then existed.

We conclude that the judgment and decree must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—Respondents had no cause of action when they sued and commenced their action prematurely, as the trial court held. The findings quoted, excepting findings X and XI (the first of which is a conclusion and not a finding), all sustain relief for appellant.

With a very substantial part of the contract unperformed, respondents unjustifiably sued. Until then, appellant had been seeking, and respondents promising, performance. Notice of rescission, prior to that act of respondents, on the part of appellant would certainly have been "premature" and uncalled for. When suit against appellant was prematurely started, the first opportunity was presented to claim rescission.

The expenditure of several hundred dollars by the sales company in installing the set in appellant's plant, constituted nothing more than *bona fide* efforts to substantially perform the contract, which finally failed. Consent on the part of appellant to that effort was but consent to performance of the contract, and not conduct inconsistent therewith.

This is not a case where the discretion of the trial judge will not be disturbed under the ordinary rule. This is a case where the trial judge sat as a chancellor, made certain findings and judgment, and we, as the appellate court, sit also as chancellors and try the case *de novo*.

Although, on first consideration I was disposed to the result reached by the majority, on more careful and attentive study, I am unable to concur. I therefore dissent.